# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Rudolph Technologies, Inc., a Delaware corporation, | ) ) ) **Civil No. 15-cv-1246** (ADM/BRT) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| Camtek Ltd., a foreign corporation, | ) ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S OPPOSITION TO CAMTEK'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION AND SUPPORTING AFFIDAVITS**

**I.    INTRODUCTION**

The challenged declarations of Dr. Mundy and Ms. McCloskey directly reply to Camtek's opposition arguments and do not raise any new issues.  The reply papers thus conform to Local Rule 7.1(c)(3)(B).  Camtek provides no specifics as to any purported prejudice to it, because there is none.  The declarations address Camtek's own information provided in its opposition papers or to its investors—nothing surprising to Camtek.  Camtek cites nothing that it would say or do if it had extra time for a surreply.  The motion is a worried reaction to the strength of Rudolph's reply and is a delay tactic.  It is meritless and should be denied.

**II.   ARGUMENT**

    **A.  Local Rule 7.1(c)(3)(B) Permits Reply Declarations that Respond to the Opposition Papers.**

It is appropriate under the Local Rules to raise arguments in a Reply brief that relate to issues raised in an Opposition brief.  *See Ara, Inc. v. Barnes Pers. Mgmt.*, Civ. No. 12-2812, 2014 U.S. Dist. LEXIS 103610, at *27-28 n.9 (D. Minn. July 30, 2014) ("The local rules . . . indicat[e] that arguments that **are** related to the opposing party's response are appropriate material for a reply brief.") (emphasis in original); *see also W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, Civ. No. 13-1686, 2014 U.S. Dist. LEXIS 136851, at *49-50 n.8 (D. Minn. Sept. 29, 2014) (accepting  arguments "adequately relating to" response to opening memorandum ); *Beveridge v. Northwest Airlines, Inc.*, 259 F. Supp. 2d 838, 845-46 (D. Minn. 2003) (holding there was "no legitimate reason" to strike when the Plaintiff's Reply "fairly traces the arguments

advanced by the Defendant in its Response Memorandum" and the Reply Affidavit was "directly responsive" to Defendant's arguments).

Camtek does not appear to dispute that Rudolph's Reply meets the Rule's requirements on their face. Instead, Camtek turns to an Advisory Committee comment. When the text of the Rule is clear, however, the issue should be decided without turning to the Advisory Committee notes. *See, e.g.*, *Soto v. John Defendants*, Civ. No: 13-cv-640, 2014 U.S. Dist. LEXIS 53697, at *12-13 n.7 (D. Minn. Feb. 13, 2014) (finding that because an issue "can be determined without delving into Advisory Committee notes, the Court does not address this argument."). Because Rudolph's Reply directly addressed matters related to the Opposition, this Court should deny the motion to strike. See *Ara, Inc.*, 2014 U.S. Dist. LEXIS 103610, at *27-28 n.9; *Beveridge*, 259 F. Supp. 2d at 845-46.

Camtek cites *Buffets, Inc. v. Leischow.*, 732 F.3d 889 (8th Cir. 2013). In *Buffets*, the movant failed to address a factor on which it bore the burden of proof until its reply and should have "reasonably anticipated" the need to address it in its opening brief. *Id.* at 895. The appellate court found no abuse of discretion in precluding the new arguments. Here, however, there is no dispute that Rudolph's opening brief addressed all factors relevant to preliminary relief on which Rudolph has the burden. Rudolph then replied to (1) information Camtek designated as confidential and refused to provide in discovery and (2) Camtek's quarterly and SEC offering disclosures made after Rudolph filed its motion—information to which Rudolph had no prior access and could not "reasonably anticipate." Camtek ignores these important distinctions.

Moreover, even where a party could have anticipated the non-moving party's arguments, a reply declaration should not be stricken as long as it is directly responsive to the opposing party's opposition.  *Beveridge*, 259 F. Supp. 2d at 844-46 (refusing to strike supporting affidavit submitted with Plaintiff's reply brief, stating that "[a]lthough we agree with the Defendant, that those facts could arguably have been relevant to the issues which were raised earlier in the pleading process, we find the Reply Affidavit to be directly responsive to the Defendant's contention, in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.").  The Advisory Committee note that Camtek cites is directed to situations where the moving party deliberately withholds its arguments and facts from its opening brief and introduces them for the first time in the reply.  D. Minn. LR. 7.1, 1999 Advisory Committee note ("It is improper to withhold information – either from discovery or from initial moving papers – in order to gain an advantage.")  This is not what occurred here.

### B. Dr. Mundy's supplemental declaration responds to Camtek's opposition arguments and complies with Rule 7.1(c)(3)(B).

Dr. Mundy's Supplemental Declaration appropriately responds to and cites evidence Camtek provided in its opposition brief and supporting declarations.  Camtek argues in its brief that Dr. Mundy "raise[d] new grounds for relief or present[ed] matters that do not relate to the opposing party's response."  L.R. 7.1(c)(3)(b).  Camtek provides no supporting details or analysis, however.  This failure warrants denial of the motion.

A large portion of Dr. Mundy's Supplemental Declaration serves to narrow the issues by identifying facts that Camtek did not dispute or effectively conceded in its

Opposition brief. For example, see paragraphs 4, 8-9, 11, 13, 15, 18-21, 31, 37, 39, and 70, where Dr. Mundy considered Camtek's confidential information and expert declaration that include admissions relating to each of the elements of claim 1 and confirms his original opinion that the Eagle meets the various elements. (*See* Dkt. No. 66.) One such paragraph is as follows:

> 8.  Camtek admits that the purpose of the Eagle is to inspect wafers for defects. In Dr. Mellor's declaration, ¶ 82, he states, 'The Eagle products are back-end optical inspection devices.' (Mellor Decl. ¶ 82.) Dr. Mellor further defines 'Back-end' inspection in ¶ 64 of his declaration as, 'Back-end optical inspection is thus everything that occurs after the die is created. This includes every optical inspection that happens after the passivation layer is added.' (*Id.* ¶ 64.) Moreover, in Mr. Langer's declaration, ¶ 8, he states, 'The Eagle product is the newest back-end inspection product.' (Langer Declaration, Dkt. No. 59 (hereinafter referred to as 'Langer Decl.'), ¶ 8.) This admission is consistent with ¶ 30 of my original declaration where I demonstrate that the Eagle satisfies the preamble of the claim. (Dkt. No. 18 ¶ 30.)

(*Id.* at ¶ 8.) These paragraphs are directly responsive to Camtek's opposition papers and could not have been stated in the original declaration, as Camtek had not made the disclosures and admissions at that time.[1] They also directly refute Camtek's argument that Dr. Mundy was wrong about how the Eagle operates.

Dr. Mundy's Supplemental Declaration also showed that the confidential information Camtek proffered in its opposition papers does not refute infringement, but actually supports his opinion that the Eagle infringes. *See* paragraphs 2-6, 22-29, 32-35,

---

[1] When Rudolph moved for authorization to file Dr. Mundy's Supplemental Declaration under seal, Rudolph noted that Dr. Mundy's Supplemental Declaration was only relying on the confidential information that Camtek provided in its opposition filing (Dkt. No. 73 at 1.) This Court granted Rudolph's motion. (Dkt. No. 74.)

40-67, and 71-72. This further demonstrates that Dr. Mundy's Supplemental Declaration is responsive to Camtek's Opposition brief and provides analysis that could not have been provided with the moving papers.

The remaining paragraphs of Dr. Mundy's Supplemental Declaration identify where in his original declaration he opined on a particular element of claim 1. For example, see paragraph 7 below:

> 7.   I declared in my original declaration that the Eagle satisfies the preamble of Claim 1 because it is an automated system for inspection of substrates, including at least patterned wafers. (Dkt. No. 18 ¶ 30.)

(Dkt. No. 66 ¶ 7.) See also paragraphs 10, 12, 14, 16-17, 30, 36, 38, 68, and 69. It is inconceivable how Camtek could object to these paragraphs as raising new grounds for relief or presenting matters unrelated to Camtek's noninfringement position in its Opposition brief.

Camtek fails to demonstrate how Dr. Mundy's Supplemental Declaration raises new grounds for relief or presents matters unrelated to Camtek's Opposition brief. Camtek's wholesale objections are meritless.

### C. Frances McCloskey's Supplemental Declaration Complies with Rule 7.1(c)(3)(B).

Ms. McCloskey's Supplemental Declaration also complies with L.R. 7.1(c)(3)(B). Ms. McCloskey's Supplemental Declaration does not introduce new facts or grounds for relief.

Camtek's attack on Ms. McCloskey as raising new arguments ignores the arguments that Rudolph advanced in its opening brief. (Dkt. No. 76 at 6.) Rudolph's

moving papers, however, showed how the patented invention is a significant factor in what customers have come to expect and demand when purchasing a wafer inspection machine. Without it, Camtek would not have been competitive in any contest between its wafer inspection machine and Rudolph's wafer inspection machines. (*See* Dkt. No. 8 at 6-7, 31.) At pages 3-4, Rudolph described how Camtek had called Rudolph's strobing invention a "breakthrough." (Dkt. No. 8.) Rudolph describes how this patented technology was a major improvement over prior art systems and that it had made Rudolph the market leader. (*Id.* at 3.) Pages 8-12 and 31-35 of Rudolph's opening brief describes how Camtek's infringing use of the breakthrough strobing technology is directly tied to the harm Rudolph will continue to suffer unless Camtek is enjoined. (*Id.*) The initial declaration of Ms. McCloskey provides evidence of this harm and a nexus to the patented invention, and the effect of incumbency in this market, whether or not it used the word "nexus."

Ms. McCloskey's Supplemental Declaration addressed Camtek's opposition arguments. No new arguments or theories were advanced in the reply or in Ms. McCloskey's Supplemental Declaration. Ms. McCloskey addressed, for example, how the other market factors Camtek raised did not defeat her showing of irreparable harm. (*See e.g.*, Dkt. No. 69, ¶ 16). Ms. McCloskey also noted that Camtek admitted or failed to dispute key facts that show irreparable harm, and explained why the facts in the cases cited by Camtek are fundamentally different. For example, Camtek did not refute that Camtek and Rudolph compete in a two-supplier, design-wins market.

Elsewhere, Ms. McCloskey shows that Camtek did not dispute statements she made in her initial declaration. For example, in Paragraph 5 of Ms. McCloskey's Supplemental Declaration, she states "Camtek . . . does not dispute that Rudolph is sustaining tangible and intangible losses because of the allegedly infringing competition with the Eagle products. Camtek does not deny that Rudolph will sustain losses from the allegedly infringing competition as lost sales, pricing pressure, and market share declines." This analysis raises no new issues; indeed it narrows them.

Camtek appears to complain that Rudolph did not follow the holdings in the *eBay* line of cases. As noted above, Rudolph's opening brief did in fact show it was the patented technology that increased throughput which is tied to the harm Rudolph will suffer. Moreover, Rudolph believes this case is closely aligned with *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325 (Fed. Cir. 2013). Like *Broadcom*, the wafer inspection machine market is fundamentally different than the smart phone market in *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314 (Fed. Cir. 2012). Unlike the market for smart phones, here a customer will either purchase a product by Rudolph or one by Camtek. The wafer inspection market has a small set of customers. Moreover, there is a strong incumbency effect in the wafer inspection machine market, which enhances a winning supplier's ability to sell more later. All of these characteristics are in contrast with the cell phone market in *Apple* where there were many discrete sales to numerous consumers. *See Broadcom*, 732 F.3d 1325; *see also Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) (where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to

compete against products that incorporate and infringe its own patented inventions.) Each of these factors was argued and identified in Rudolph's opening brief and Ms. McCloskey's initial declaration. Rudolph's reply refuted and further responded to Camtek's arguments on this issue.

Rudolph and Ms. McCloskey also appropriately responded to Camtek's arguments about balance of hardships and the public interest. Rudolph's opening brief also addressed these factors. The supplemental declaration of Ms. McCloskey rebuts Camtek's Opposition arguments. (*See* Dkt. No. 69, ¶ 25.)

Ms. McCloskey's Supplemental Declaration also replies to Camtek's argument that Rudolph can be made whole by paying monetary damages. (Dkt. No. 56, at 33-38.) In particular, paragraphs 22-24 of Ms. McCloskey's Supplemental Declaration show that Camtek likely will not be financially capable of paying a judgment in light of its bleak financial outlook. Moreover, this analysis relies on new financial disclosures by Camtek not available at the time of Ms. McCloskey's first declaration, confirming there was no way to present this information then.

Similarly, paragraph 25 of Ms. McCloskey's Supplemental Declaration directly responds to Camtek's assertion that it will be harmed by an injunction. (Dkt. No. 56, at 40-42.) In that paragraph, Ms. McCloskey states various mitigating factors that minimize any harm to Camtek.

Finally, paragraph 26 of Ms. McCloskey's Supplemental Declaration responds to Camtek's requested bond amount. (Dkt. No. 56, at 44, 45.) Ms. McCloskey calculates a lower bond amount based on Camtek's projected sales of 30 Eagle inspection systems.

Ms. McCloskey's Supplemental Declaration does exactly what it is supposed to do—reply to Camtek's arguments. It complies with the local rules.

Camtek also seeks to strike portions of the reply brief based on the supplemental declarations. Camtek provides no specific arguments directed to the briefs, so its request should be denied. Moreover, the challenge is based on Camtek's challenge to the expert declarations, shown above to be meritless.

### III.   CONCLUSION

For all of the above stated reasons, the Court should deny Camtek's motion to strike in its entirety.

**Rudolph Technologies, Inc.**

By its Attorneys,

Dated:  June 3, 2015

s/Daniel W. McDonald
Daniel W. McDonald (MN #168580)
William D. Schultz (MN #0323482)
Joseph E. Lee (MN #329071)
Thomas R. Johnson (MN #0242032)
**MERCHANT & GOULD P.C.**
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081